THE CITY OF HALLOWELL *versus* THE CITY OF AUGUSTA.

In the trial of an action of assumpsit for supplies furnished a pauper, the admission, by the defendants, that the pauper (who was a female,) fell into distress as alleged; that the supplies were furnished; that notice was seasonably sent and received; and that the pauper had her legal settlement in the plaintiff town at the time of her marriage; makes out a *prima facie* case for the plaintiffs, and the burden is upon the defendants to show that the husband had a settlement in this State; for by R. S., c. 24, § 1, the settlement of a female pauper is not affected by her marriage, unless her husband is shown to have a settlement in this State,

An illegitimate, born in this State in 1817 or 1818, would take, by the statute of Mass., of 1794, c. 34, then in force, the settlement of his mother at that time, if she had any in the State.

If the mother acquired a settlement in this State by residing here March 21, 1821, — the date of the settlement Act — (so called,) it would not affect the settlement of her illegitimate son

THIS is an action for supplies furnished by Hallowell to widow Sally Wright and her five minor children.

The fact that Mrs. Wright and children fell into distress, as alleged in the writ; that supplies were furnished to a certain amount hereafter to be ascertained; that a notice was seasonably sent and received; and that Mrs. Wright had her legal settlement in Augusta at the time of her marriage with John Wright, were admitted by the defendants.

It was not admitted that the articles furnished were suitable and necessary in kind.

The following is a copy of the items claimed by plaintiffs :

1859, Jan. 4, cash paid for wood by Jesse Aiken,     $2 50
"      " 25,  "    "    "    "          "     "          4 00
" Feb. 19, paid M. Johnson for supplies, as follows :
" Jan.  4,        .     .     .·    .     .     2 00
"    " 13,        .     .     .     .     .     2 00
"    " 18 to Feb. 12,        .     .     .     6 82
" Feb. 12 to March 1,        .     .     .     6 10
        Cutting wood for Mrs. Wright              60  17 52

Augusta *v.* Hallowell.

| | |
|---|---:|
| Feb. 23, Supplies to Mrs. Wright, | 2,00 |
| March 29, Paid F. L. Ball for moving Mrs. Wright, | 2,00 |
| | $28,02 |
| Interest on same, | 2,02 |
| | $30,04 |

The plaintiffs then stopped.

The defendants then contended that the plaintiffs should show that John Wright had not a residence in the State, before they could resort to the residence of the wife and mother; but the Court ruled otherwise, holding the burden of proof to be on the defendants, to show the settlement of Wright.

The defendants thereupon proceeded with their defence. In behalf of the defendants, the plaintiffs admitted that the pauper was married some years ago to one John Wright, since deceased, and that denial was seasonably returned to the plaintiffs' notice. Defendants then called

*Mrs. Laura Avery,* who testified :—I was acquainted with John Wright all his life-time. He was born in Readfield. I lived in the same house where he was born, in January of 1817, or 1818, I cannot say which. His mother was Betsey Cressy. She had made it her home at Readfield for a good many years. She had been there about a year at that time when John was born. She had lived in Augusta a good deal. Her mother lived in Wayne. John Wright was an illegitimate child. Betsey lived there till she was married to John King. This was the winter after he was five years old in January. Then she lived in Augusta a number of years. She was boarding in the same house with me at the birth of John. Miss Cressy and I both resided at Readfield, March 21, 1821.

*Cross-examined.*—I knew Betsey nearly all her life. She was older than I was. She was between 20 and 30 years old, probably, when John was born. She lived at Dillingham's in Augusta before she first came to Readfield. Betsey

was 17 or 18 years old when she first came to Readfield. Mrs. Crosby was her sister. She had made her home in Readfield some four or five years when John was born. She did not then make her home at her mother's in Wayne. Can't say where she was born. I do not know whether she had any help from the town at, before, or after the birth of her child.

When the child was born, I was about 8 years old, and now am 51. She came to Readfield some three or four years before that. She was not a foreigner. I did not know her father. I do not know where Betsey's legal settlement was at the birth of John.

*Direct.*—John Wright always lived in this State till the time of his death. Can't say when he died, but some five or six years ago.

*Cross-examined.*—I have lived in Augusta 28 years. John Wright moved to Augusta the year before the Aroostook war, to make his home. He was a single man. He enlisted in the Aroostook war, went to the war and then came back and lived with my husband two years, in Augusta, and then moved to Vassalborough. He resided about three years in Augusta.

*Francis Davis*, called by defendants.—I was acquainted with Betsey Cressy and John Wright. She lived in Readfield. I remember her in Readfield when I was a very small boy, and to the time John was born, and several years after, till she married King. I should think she was about 30 years old when the child was born. She married King some seven or eight years after that. Her residence was in Readfield, March 21, 1821.

*Cross-examined.*—I would not say Betsey was more than 25 years old when John was born.. I never knew her father. He did not live in Readfield. Betsey was not born in Readfield.

The case was withdrawn from the jury, to be reported to the full Court, who are to draw such inferences as a jury might, and to render judgment for the plaintiffs or defend-

Augusta *v.* Hallowell.

ants, according to the law and the facts; and either party is to have the right to be heard in damages if judgment is for the plaintiffs.

*J. Baker*, for the plaintiffs.

No paper that has come into the hands of the Reporter indicates who was counsel for the defendants.

The opinion of the Court was drawn by

BARROWS, J. — All the points essential to the plaintiffs' right to recover in this action are established by the admissions of the defendants, unless we find from the evidence in the case that the settlement of the pauper, Sally Wright, was changed by her marriage. Her own settlement in Augusta was not affected by her marriage, unless her husband is shown to have had a settlement in this State. R. S., c. 24, § 1, rule 1.

To change it, the defendants must show, affirmatively, that he had such a settlement. They cannot require the plaintiffs to prove that her original settlement was *not* changed, for it is presumed to continue till a new one is shown to have been gained.

Does it appear that John Wright, the husband, had a settlement in this State? He was an illegitimate child, born in Readfield, in 1817 or 1818. He followed the settlement which his mother had at the time of his birth. It does not appear where her settlement at that time was, or that she had any in this State. She was not born in Readfield. Her parents did not reside there. She came there four or five years before the birth of John, being then seventeen or eighteen years old. At the time of his birth, she had acquired no settlement in Readfield, so far as the case shows, in any of the modes prescribed by the statute of 1794, c. 34, then in force. The settlement which she subsequently acquired in Readfield, by residing there, March 21, 1821, the date of the settlement Act (so called) would not affect that of her son John, which would continue to be that which she had at his birth until he gained one in his own right.

*Biddeford* v. *Saco*, 7 Maine, 270; *Houlton* v. *Lubec*, 35 Maine, 411. There is nothing in the case to indicate that he ever did so gain a settlement, and consequently there is a total failure of evidence to show that he had a settlement in this State, or that that of Sally Wright, the pauper, was changed from Augusta by her intermarriage with him.

A hearing in damages is to be had, in pursuance of the agreement of the parties.          *Defendants defaulted.*

APPLETON, C. J., CUTTING, DAVIS and WALTON, JJ., concurred.